IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MELISSA MILLER,

                Plaintiff,                             OPINION AND ORDER

    v.

                                           14-cv-116-slc

INTERSTATE AUTO GROUP, INC. (WI)
d/b/a CARHOP,

                Defendant.

---

Plaintiff Melissa Miller has filed this civil lawsuit against defendant Interstate Auto Group, Inc., pursuant to the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r. Before the court are competing dispositive motions: plaintiff has moved for judgment in her favor on her claim that defendant violated the EFTA's anti-waiver provision, 15 U.S.C. § 1693l; defendant has moved for summary judgment on plaintiff's anti-waiver claim and her claim that defendant violated § 1693e(a).  For the reasons stated below, I am denying plaintiff's motion and granting defendant's.[1]

The relevant facts are straightforward and undisputed:

FACTS

Plaintiff Melissa Miller is a resident of Wisconsin and is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(5) and its implementing regulation, Regulation E.  Defendant Interstate Auto Group, Inc., d/b/a Carhop, is a Minnesota corporation licensed in the state of Wisconsin to conduct business, namely, selling and financing the sale of motor vehicles.

---

[1] The court's ruling takes into account plaintiff's offer to withdraw her claim under § 1693e(a), *see* dkt. 26 at 1, n.1.  *Infra* at 6.

Defendant is not a bank, credit union, savings and loan association or mutual savings bank, and it does not hold any deposits or deposit accounts belonging to consumers.

On or about May 6, 2013, plaintiff entered into a retail installment sales contract with defendant for the purchase of a 2001 Chevrolet Impala.  Sec. Aff. of Matthew Pfohl, dkt. 24, exh. A.   Plaintiff also entered into an optional recurring electronic funds transfer (EFT) authorization with defendant so that she could make installment payments under the contract. *Id*. at 7.  By signing the EFT Authorization, plaintiff authorized defendant "to make electronic fund transfers in the form of ACH [Automated Clearing House] debit entries" from her bank account and to electronically credit those amounts upon receipt to the amounts due under her retail installments sales contract with defendant.  *Id*.  The authorization committed plaintiff to making a weekly payment of $94, beginning May 10, 2013.  Defendant is the designated payee on the EFT authorization.  *Id*.

The EFT Authorization contains this provision:

> You understand and agree that this authorization will remain in effect until (I) your contract with us is paid in full or (ii) you cancel this authorization by calling us at (800) 414-2622, completing a change notice at www.uac.com, or by submitting a new copy of this form to us.  We must be notified of cancellation at least 5 days prior to the payment due date.  You agree to notify us of any changes to your bank account information.   You acknowledge that the origination of ACH transactions to your account must comply with the provisions of applicable law and the Rules of the National Automated Clearing House Association. You request the financial institution that holds the account to honor the debit entries that we initiate.
>
> *Id*.

Plaintiff's two-count complaint claims that this provision violates § 1693e(a) and § 1693l of the EFTA; in her pending motion, she seeks judgment on Count II, her § 1693l claim. Defendant seeks judgment on both of plaintiff's claims.

OPINION

**I.  Standard of Review**

Plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. Pro. 12(c). When considering such a motion, the court must apply the same legal standards that govern motions to dismiss under Rule 12(b)(6) (failure to state a claim on which relief can be granted). *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL–CIO*, 335 F.3d 643, 647 (7th Cir. 2003). A court may not grant a motion under Rule 12(c) "unless it appears beyond a doubt that the non-moving party cannot prove any facts that would support his claim for relief." *Id.* (citations and alterations omitted).  In deciding such a motion, the court may consider only the pleadings: the complaint, answer, and any written instruments attached as exhibits.  *Housing Auth. Risk Retention Grp., Inc. v. Chicago Housing Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). Summary judgment is proper where there is no showing of a genuine issue of material fact in the

pleadings, depositions, answers to interrogatories, admissions and affidavits, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).[2]

Both parties agree that this case involves a pure question of law that can be resolved on the parties' submissions.

## II.  The Electronic Funds Transfer Act

In 1978, Congress enacted the EFTA as part of the comprehensive Consumer Credit Protection Act (the "CCPA"), codified as amended at 15 U.S.C. §§ 1601 et seq. *See Clemmer v. Key Bank Nat. Ass'n*, 539 F.3d 349, 350 (6th Cir. 2008).  In addition to the EFTA, the CCPA includes several other consumer-protection statutes, including the Truth in Lending Act, 15 U.S.C. §§ 1601–1667f, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x.

Congress enacted the EFTA in order "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b).  Its primary objective, however, is to provide individual consumer rights. *Id*.  "The EFTA, like the TILA and other CCPA provisions, is a remedial statute accorded 'a broad, liberal construction in favor of the consumer.'" *Clemmer*, 539 F.3d at 353 (quoting *Begala*

---

[2]   In addition to the pleadings, the installment contract and the EFT Authorization form, defendant has submitted an affidavit establishing that it is not a financial institution, along with payment notes from plaintiff's account showing that defendant complied with oral requests from plaintiff that it refrain from initiating debits to plaintiff's bank account on certain dates. Sec. Aff. of Matthew Pohl, dkt. 24.  Although this evidence is not disputed, I agree with plaintiff that the fact that defendant accommodated her verbal requests to delay debiting her account is irrelevant.  The EFTA is a strict liability statute and plaintiff is seeking only statutory damages. *See Burns v. First Am. Bank*, No. 04 C 7682, 2006 WL 3754820, at *6 (N.D. Ill. Dec. 19, 2006) (citing *Bisbey v. D.C. National Bank*, 793 F.2d 315, 318-19 (D.C.Cir.1986)).

*v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998) (citations omitted)).  The

EFTA is implemented through Regulation E, codified at 12 C.F.R. § 1005.[3]

      One of the rights conferred by the EFTA is the right to "stop payment of a preauthorized

electronic fund transfer by notifying the financial institution orally or in writing at any time up

to three business days preceding the scheduled date of such transfer."  15 U.S.C. § 1693e(a).

An electronic fund transfer under the Act is "any transfer of funds, other than a transaction

originated by check, draft, or similar paper instrument, which is initiated through an electronic

terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or

authorize a financial institution to debit or credit an account," including direct withdrawals of

funds. 15 U.S.C. § 1693a(7); 12 C.F.R. § 1005.3(b).  A "preauthorized electronic fund transfer"

is an electronic fund transfer "authorized in advance to recur at substantially regular intervals."

15 U.S.C. § 1693a(10); 12 C.F.R. § 1005.2(k).  The parties agree that the recurring transfers

from plaintiff's bank account pursuant to the EFT Authorization constitute "preauthorized

electronic fund transfers" as defined by the Act.

      Set out in full, 15 U.S.C. § 1693e(a) provides:

> A preauthorized electronic fund transfer from a consumer's
> account may be authorized by the consumer only in writing, and
> a copy of such authorization shall be provided to the consumer
> when made.  A consumer may stop payment of a preauthorized
> electronic fund transfer by notifying the financial institution orally
> or in writing at any time up to three business days preceding the
> scheduled date of such transfer.  The financial institution may

---

[3] Rule-making authority under the EFTA initially was exercised by the Federal Reserve Board, which published regulations implementing the Act at 12 C.F.R. § 205.  In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act transferred rule-making authority to the Consumer Financial Protection Bureau (CFPB).  In December 2011, the CFPB restated Regulation E without substantive changes at 12 C.F.R. § 1005.

require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

Similarly, Regulation E provides at 12 C.F.R. § 1005.10(c):

Consumer's right to stop payment—

(1) Notice. A consumer may stop payment of a preauthorized electronic fund transfer from the consumer's account by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer.

(2) Written confirmation.  The financial institution may require the consumer to give written confirmation of a stop-payment order within 14 days of an oral notification. An institution that requires written confirmation shall inform the consumer of the requirement and provide the address where confirmation must be sent when the consumer gives the oral notification.  An oral stop-payment order ceases to be binding after 14 days if the consumer fails to provide the required written confirmation.

### III.  15 U.S.C. § 1693e(a)

In her complaint, plaintiff alleged that defendant violated § 1693e(a) by requiring her to provide five days rather than three days notice to defendant in the event she wished to cancel her EFT authorization.  After defendant moved for summary judgment on this claim, plaintiff indicated her consent to "withdraw" this claim "to simplify the briefing in this matter."  Br. in Opp. to Mot. for Summ. Judg., dkt. 26 at n1.  The court appreciates the gesture, but because it is unclear whether plaintiff is volunteering to withdraw this claim with prejudice, the court will rule on it.

Defendant contends that, under the plain terms of the statute and Regulation E, § 1693e(a) applies only to financial institutions.  I agree.  The statute confers upon a consumer

6

the right to stop payment of a preauthorized electronic fund transfer by notifying her "financial institution." The EFTA defines "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer . . . ." 15 U.S.C. § 1693a(9). An "account" is defined by the act as "a demand deposit, savings deposit, or other asset account." *Id*. at § 1693a(2). It is undisputed that defendant does not hold any depository accounts held by consumers and therefore is not a financial institution.

The EFTA's implementing regulation confirms, at 12 C.F.R. § 1005.3(a), that only certain parts of the EFTA apply to persons other than financial institutions. The regulation goes on to list the parts that apply to "any person;" the stop-payment provision (set out in the regulation at § 1005.10) is ***not*** on this list.

Also buttressing the court's conclusion are 15 U.S.C. § 1693c and 12 C.F.R. § 1005.7, which require only financial institutions to inform consumers of their stop payment rights, and § 1693h(a)(3), which limits liability to financial institutions for violations of the stop payment provisions concerning preauthorized transfers. 15 U.S.C. § 1693h(a)(3).

Finally, at least two other district courts that have considered this same question agree that the terms of 1693e(a) are enforceable only against financial institutions. *Baldukas v. B & R Check Holders, Inc.*, No. 12-CV-01330-CMA-BNB, 2012 WL 7681733, at *5 (D. Colo. Oct. 1, 2012) *report and recommendation adopted sub nom. Baldukas v. B & R Check Holders*, No. 12-CV-01330-CMA-BNB, 2013 WL 950847 (D. Colo. Mar. 8, 2013); *Murphy v. Law Offices of Howard Lee Schiff, P.C.*, No. CIV.A. 13-10724-RWZ, 2014 WL 710959, at *1 (D. Mass. Feb. 26, 2014).

For all these reasons, I find that the stop payment provisions of the EFTA and Regulation E are enforceable against financial institutions only and not against third-party payees such as defendant.  Defendant is entitled to summary judgment on this claim.

## IV.  15 U.S.C. § 1693l

This leaves plaintiff's claim under 15 U.S.C. §1693l, known as the EFTA's anti-waiver provision.   That section provides:

> No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter. Nothing in this section prohibits, however, any writing or other agreement which grants to a consumer a more extensive right or remedy or greater protection than contained in this subchapter or a waiver given in settlement of a dispute or action.

15 U.S.C.A. § 1693l.  Defendant acknowledges that this section prohibits *any* person–not just financial institutions–from requiring a consumer to waive rights she has under the EFTA.[4]

Plaintiff contends that defendant's EFT Authorization violated the anti-waiver provision because it contained a provision imposing greater requirements to stop payment than what is allowed under the EFTA.  Specifically, plaintiff points to the cancellation provision, which reads:

> You understand and agree that this authorization will remain in effect until (I) your contract with us is paid in full or (ii) you cancel this authorization by calling us at (800) 414-2622, completing a change notice at www.uac.com, or by submitting a new copy of this form to us.  We must be notified of cancellation at least 5 days prior to the payment due date.

---

[4] For a violation of the EFTA by a non-financial institution, a prevailing consumer is entitled to recover "an amount equal to the sum of ... any actual damage sustained by such consumer as a result of such [violation]; ... [or] an amount not less than $100 nor greater than $1,000; ... [plus] the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1693m(a).

According to plaintiff, this provision violates § 1693l because it

> only allowed Plaintiff to cancel the preauthorization by contacting
> Defendant, as opposed to Plaintiff's financial institution, at least
> 5 days prior to the payment due date.

Mot. for Judg. on Pleadings, dkt. 20, at 4. Plaintiff's argument rests on the notion that there is no meaningful distinction between the right of cancellation set forth in defendant's EFT Authorization with the statutory right to stop payment. Defendant, on the other hand, argues that there is a distinction: whereas the EFTA confers upon consumers the right to stop a single preauthorized fund transfer, defendant's EFT Authorization confers upon the consumer the right to entirely revoke her authorization for transfers to be made in the first place.

I begin with an examination of the specific right conferred by the EFTA. *Accord CompuCredit Corp. v. Greenwood*, 132 S. Ct. 670 (2012) (examining statutory language of Credit Repair Organizations Act to determine scope of right conferred before deciding whether arbitration agreement violated CROA's non-waiver provision). The language is straightforward: it guarantees the consumer the right to stop payment of a preauthorized electronic fund transfer by contacting her financial institution, either orally or in writing, up to three days preceding the scheduled date of the transfer.

Defendant argues that its proposed interpretation of the statute–that it confers the right to stop a single transfer–is confirmed by Congress's use of the singular before the term "preauthorized electronic fund transfer." Defendant's interpretation is consistent with how the term "stop payment" is used in the Uniform Commercial Code, which describes a consumer's stop payment right in terms of a single "item." *See* Uniform Commercial Code § 4-403(a) (customer may "stop payment of any item drawn on the customer's account . . . by an order to

the bank describing the item . . . with reasonable certainty received at a time and in a manner that affords the bank a reasonable opportunity to act on it before any action by the bank with respect to the item"). In the EFTA, however, Congress did not afford a right to stop payment of an "item;" instead, it used the term "preauthorized electronic fund transfer." That term, defined in the statute, means an electronic fund transfer "authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10). Given that its recurrent nature is encompassed within the definition, there is room to argue that a stop payment order of "a preauthorized electronic fund transfer" would encompass not just one fund transfer but all future preauthorized recurrences.

Lacking clear guidance from the statute or implementing regulation, I turn next to the CFPB, which has issued "Official Interpretations" of Regulation E at 12 C.F.R. pt. 1005, Supp. 1. It is not clear to what degree this court should defer to these "official interpretations." In *Fridman v. NYCB Mortgage Co., LLC*, 780 F.3d 773, 776 (7th Cir. 2015), the court, when addressing CFPB Official Interpretations of Regulation Z, suggested that these interpretations, which did not go through a formal notice-and-comment procedure, may be considered unless they are "demonstrably irrational." In dissent, Judge Easterbrook rejoined that it was not clear that the court owed the commentary any deference at all. *Id*. at 781. (Easterbrook, J., dissenting). The CFPB has this to say about the right of stop payment described in the statute and regulations:

> 1. Stop-payment order. The financial institution must honor an oral stop-payment order made at least three business days before a scheduled debit. If the debit item is resubmitted, the institution must continue to honor the stop-payment order (for example, by suspending all subsequent payments to the payee-originator until

10

the consumer notifies the institution that payments should resume).

2. Revocation of authorization. Once a financial institution has been notified that the consumer's authorization is no longer valid, it must block all future payments for the particular debit transmitted by the designated payee-originator. (However, see comment 10(c)-3.) The institution may not wait for the payee-originator to terminate the automatic debits. The institution may confirm that the consumer has informed the payee-originator of the revocation (for example, by requiring a copy of the consumer's revocation as written confirmation to be provided within 14 days of an oral notification). If the institution does not receive the required written confirmation within the 14-day period, it may honor subsequent debits to the account.

The agency's commentary raises as many questions as it answers. Why the change in terminology from "stop payment" in the first paragraph to "revocation of authorization" in the second? Is the agency implying that a request by a consumer to stop payment is the same as notification that her "authorization is no longer valid"? This is essentially what plaintiff in this case is arguing. Or, is the agency saying that a consumer's notice to her financial institution that she has "revoked" her authorization is something different from a stop payment order? If the latter, would this be a rational interpretation of the statute, which says nothing about "revocation of authorization"?

Notwithstanding this interpretive fog, the agency's commentary is clear about this: the right to stop payment is a right that a consumer exercises directly with her financial institution independently of any right of cancellation or revocation that she might have with respect to the third party payee-originator. The payee, as the originator of the debit entries to the consumer's account, is not statutorily obliged to stop making debits simply because a consumer has notified her bank to stop payments. In other words, the stop-payment rights described in the EFTA

11

apply only at the transfer end of the electronic fund transfer process, not at the origination end. To stop debits from being made at the origination end, the consumer must notify the payee. In fact, a bank may lift a stop payment order if the consumer fails to confirm that she has notified the payee that the payee no longer is authorized to originate transfers from her account. Contrary to plaintiff's position, the agency responsible for implementing the EFTA *does* see a meaningful difference between a consumer's statutory right to stop payment and her contractual right to revoke her authorization for the payee to initiate debits.

Defendant's EFT Authorization is entirely consistent with this understanding. It provides that plaintiff's authorization would remain in effect unless plaintiff cancelled it, notified defendant that she had changed banks, or paid off her debt. It says nothing about plaintiff's right to stop payment and it does not purport to describe plaintiff's rights with respect to her financial institution. When the EFT Authorization is read as a whole, it is plain that the 5-day notification requirement for "cancellation" refers to plaintiff's contractual right to revoke her entire authorization, not to her co-existent and separate statutory right to ask her bank to stop payments made pursuant to that authorization. As such, the EFT Authorization does not "constitute a waiver" of plaintiff's right to stop payment under § 1693e(a).

To the extent that the non-binding district court opinions in *Baldukas* and *Murphy* suggest a different conclusion, I decline to afford them any weight. Although both courts offered a thorough analysis of the claims brought under § 1693e(a), neither court offered an equally satisfactory analysis of the plaintiffs' § 1693l claims. Moreover, the provisions at issue in those cases each contained wording that arguably implicated the plaintiffs' statutory stop-payment rights. *Baldukas*, 2012 WL 7681733, *1 (providing that authorization was "to remain in full

force and effect until Loan Stop and the subject Financial Institution have received written notification from me of its termination in such time and in such a manner as to afford Loan Stop and the Financial Institution a reasonable opportunity to act on it."); *Murphy*, 2014 WL 710959, *1 (stating that deductions would commence on date selected by plaintiff "and will continue until your balance is paid in full or we receive your WRITTEN REQUEST to stop ACH payments.").  Finally, both opinions were issued in the context of a motion to dismiss, not summary judgment.

In sum, defendant's EFT Authorization does not contain a provision that amounts to a waiver of plaintiff's statutory right to stop payment of a preauthorized electronic funds transfer by contacting her financial institution.  Plaintiff remained free to exercise that right regardless of the EFT Authorization's notice requirements concerning cancellation, which applied only to plaintiff's contractual arrangement with defendant.


ORDER

IT IS ORDERED that (1) Plaintiff's motion for judgment on the pleadings, dkt. 20, is DENIED; and (2) Defendant's motion for summary judgment, dkt. 21, is GRANTED.

The clerk of court is directed to enter judgment in favor of defendant and close this case.


Entered this 21st day of April, 2015.

BY THE COURT:

/s

STEPHEN L. CROCKER
Magistrate Judge

13